United States District Court
District of Arizona

Roy Sastrom, pro se
  Plaintiff,

Case No: CV-23-115-TUC-JCH-PSOT

v.

February 21, 2023

Joshua Felix,
Individual Capacity;

Mark Palmer,
Individual Capacity;

Associate Warden Williams,
Individual Capacity:

Vanessa Cardella,
Executive Director,
Connecticut Psychiatric Security
Review Board,
Individual Capacity,
        Defendants.

Introduction
  This is a Civil rights action filed by Roy Sastrom, a former federal prisoner, was incarcerated within

2). the Federal Bureau of Prisons. The plaintiff is seeking compensatory and punitive damages against each defendant in their individual capacities as well declaratory relief. The plaintiff is alleging a violation of the Extradition Clause, and the Due Process Clause of the United States Constitution. The plaintiff is also alleging the tort of kidnapping.

Jurisdiction

1). This Court has jurisdiction over the plaintiffs' claims of violation of Federal Constitutional rights under 42 U.S.C., Sections 1331(1), 1334, and 1983.

2). The Court has supplemental jurisdiction over the plaintiff's state tort claim of kidnapping under 28 U.S.C., Section 1367.

Parties

3). The plaintiff was incarcerated at the United States Penitentiary-Tucson, a facility of the Federal

3). Bureau of Prisons. The plaintiff is no longer a prisoner under the meaning of prisoner contained in the Prisoner Litigation Reform Act. The plaintiff completed his federal prison sentence on September 27, 2022. The plaintiff currently resides at the Whiting Forensic Hospital as a civil patient.

4). Defendants Joshua Felix, Mark Palmer and A.W. Williams are employed at the United States Penitentiary-Tucson. They are sued in their individual capacities.

5) Defendant Vanessa Cardella, is the Executive Director of the Connecticut Psychiatric Security Review Board, Hereinafter the (Board). She is sued in her Individual Capacity under Title 42 U.S.C., Section 1983.

Facts

6). The plaintiff was confined in the Federal Bureau of Prisons for approximately twelve years and eight months

4). after his Conviction for Armed Bank Robbery.

7). The plaintiff was confined at United States Penitentiary-Tucson at all times relevant to this Complaint.

8). The plaintiff was scheduled for release on Federal Supervised Release on September 27, 2022.

9). Six days prior to the plaintiffs' release, the plaintiff, without being given any notice or being allowed to pack personal property, was removed from U.S.P.-Tucson, placed in a government vehicle in full restraints and driven approximately 14 hours to the Federal Bureau of Prisons Transfer Center in Oklahoma City.

10). At the time of the plaintiffs' transfer, the defendants were aware that the plaintiff was contesting the validity of the Connecticut State detainer lodged by the Board, and that the plaintiff was challenging the Board's jurisdiction.

5).

11). The defendant's Felix, Palmer, Williams, and Cardella conspired together, and entered into an agreement to transfer the plaintiff to a federal facility in Connecticut to enable the Board to take jurisdiction and custody of the plaintiff, because Connecticut authorities had no jurisdictional powers outside of Connecticut, and that they couldn't legally travel to the State of Arizona and legally take custody of the plaintiff.

12). The defendant's Felix, Palmer and Williams caused the internal transfer of the plaintiff to a federal facility in Connecticut for the purpose of circumventing extradition laws and because they were aware that Connecticut authorities, the Board, and defendant Cardella could not legally travel to Arizona or take legally custody of the plaintiff outside the State of Connecticut.

13). The plaintiff contends that the following facts are relevant to

6). The plaintiffs' Claims;

14). At the time the plaintiff was internally transferred by the defendant's Felix, Palmer and Williams, the defendant's were aware that the plaintiff was not under Criminal indictment and was not a fugitive from the State of Connecticut.

15). The plaintiff Contends that defendant Cardella requested to defendant's Felix, Palmer, and Williams that the plaintiff be transferred to a federal facility in Connecticut because the Psychiatric Security Review Board as a State of Connecticut Agency had no legal Jurisdiction of the plaintiff outside of the State of Connecticut, and that they had no authority to travell to Arizona to obtain Custody of the plaintiff.

16). The plaintiff further Contends that the defendant's Felix, Palmer and Williams were aware that the detainer lodged by the Psychiatric Security Review Board was

7). Civil in nature and in relation to an insanity adjudication entered by the Connecticut Superior Court in 1994.

17). In April of 1994, the plaintiff was acquitted by reason of mental disease or defect on criminal charges.

18). The plaintiff was subsequently committed to the jurisdiction of the Connecticut Psychiatric Security Review Board for the purpose of oversight.

19). The Connecticut Psychiatric Security Review Board was established by the Connecticut legislature to oversee persons acquitted by reason of mental disease or defect.

20). In September of 1994, the Psychiatric Security Review Board ordered the plaintiff confined for "Custody" "Care" and treatment of a psychiatric disorder.

21). The plaintiff remained confined at Connecticut Valley Hospital by

8). order of the Psychiatric Security Review Board for approximately 14 years.

22). On May 31, 2008, the plaintiff while on a grounds pass in his own custody at Connecticut Valley Hospital, left the grounds without permission, which constituted a violation of the Connecticut General Statutes, Escape in the first degree.

23). The plaintiff was arrested 3 days later in Connecticut by the Bridgeport Police in Bridgeport, Connecticut at his mothers residence.

24). At the time of the plaintiffs' arrest for escape, the Psychiatric Security Review Board failed to assert their jurisdict or enforce their order of psychiatric confinement at Connecticut Valley Hospital.

25). The plaintiff was held in the Connecticut Department of Corrections pending escape charges.

9).

26). At no time during the plaintiffs pre-trial incarceration for escape did the Psychiatric Security Review attempt to obtain custody of the plaintiff in accordance with their order or statutory oversight vested in them by the Connecticut Superior Court order of Commitment.

27). The plaintiff eventually pled guilty to escape and was sentenced by the Connecticut Superior Court to 2 years in State prison.

28). At no time during the Criminal Court proceeding for escape, did the Superior Court take notice of the previous adjudication of insanity.

29). In November of 2008, the plaintiff was taken into temporary federal custody by Federal Writ of Habeas Corpus, ad prosequendum to answer to a federal Criminal indictment for Armed Bank Robbery in Federal District Court in Boston, Massachusetts in connection with the plaintiff's escape

10).

On May 31, 2008, from Connecticut Valley Hospital.

30). The plaintiff was held in federal holdover in Rhode Island.

31). On June 3, 2009, on advice from Counsel, the plaintiff pled guilty to a two Count indictment including Armed Bank Robbery.

32). On October 1, 2009, the plaintiff was Sentenced to federal prison for a period of 180 months.

33). The plaintiff Contends and Can prove that he was not returned to Connecticut after being Sentenced in federal Court in Spite of the fact that he was in Custody of the federal Government on ~~temporary~~ a temporary federal writ, ad prosequendum, and Connecticut authorities had primary Jurisdiction.

34). The plaintiff Contends and Can prove that the acting Executive

11). Director of the Connecticut Psychiatric Security Review Board, Ellen Weber LaChance, in March of 2009, gave written notice, relinquishing the Psychiatric Security Review Board's Jurisdiction, Stating, "We Sincerely hope" mr. Sastrom, is transferred to federal prison first, before returning to Connecticut.

35). The plaintiff was not returned to the primary Jurisdiction of Connecticut authorities, and instead he was designated by the Federal Bureau of Prisons to Serve his federal Sentence at United States Penitentiary-Cannaan in Waymart, PA., and delivered there by the United States Marshal Service on or about March 29, 2010.

36). The plaintiff was not under the oversight of the Connecticut Psychiatric Security Review Board for the entire time he was in federal Custody.

37). The psychiatric Security review board abandoned all procedural Safeguards afforded to the plaintiff by the Connecticut state Statutes,

12). 17a-585 and 17a-586, which affords procedural due process protections to the plaintiff by requiring a hearing, "Mandatory Review of Status" at least once every two years, and also requires the Psychiatric Security Review Board to receive periodic reports on the Plaintiffs' mental Condition every six months.

38). In June of 2022, approximately 3 months prior to the Completion of the plaintiffs' federal Sentence, the Psychiatric Security Review Board held their first hearing in 14 years and the plaintiff was only allowed to appear virtually.

39). In August of 2022, while the Plaintiff was still Confined in federal prison, the Psychiatric Security Review Board issued a memorandum of decision, and based on the plaintiffs' behavior and psychiatric diagnosis while in federal prison, the Psychiatric Security Review issued an order to Confine the plaintiff in a psychiatric hospital under maximum security

13). Conditions in the State of Connecticut upon the plaintiffs' release from federal prison.

40). The plaintiff contends and can prove that he was transferred to a federal prison in the State Connecticut soley to allow the Psychiatric Security Review to obtain Custody.

41) The plaintiff arrived at the Danbury Federal Correctional Institution in Danbury, Connecticut one day prior to release from his federal Sentence.

42). On September 27th, 2022, at approximately 6 in the morning, the plaintiff was taken into custody, placed in restraints and involuntarily brought to Whiting Forensic Hospital in Middletown, Connecticut and confined under conditions of maximum-Security.

43). The plaintiff was taken into custody by the Department of Mental Health and Addiction Services, who without a warrant arrived at Danbury Federal Correctional Institution, restr-

14). ained the plaintiff and transported him to Whiting Forensic Hospital where he has remained confined under maximum-security conditions.

44). The actions of the defendants, Felix, Palmer, Williams and Cardella constitute a violation of the United States Constitution and amounted to kidnapping the plaintiff, by unlawfully transporting the plaintiff to a federal facility in Connecticut without the benefit of an extradition hearing, and the purpose of the transfer was to circumvent extradition laws, and to turn the plaintiff over to a Connecticut State agency whos Jurisdiction of the plaintiff was relinquished and forfeited.

45). The plaintiff contends that this a case of "having your cake, and eating it too."

46). The facts of this case are clear, and the plaintiff is entitled to relief and is seeking compensatory and punitive damages in the amount, one million dollars, and is also seeking declaratory relief stating that defendants violated

15)

the Constitutional and Statutory rights of the plaintiff.

47). The plaintiff is also seeking injunctive relief from the Court including his immediate release from Whiting Forensic Hospital under the supervision of his 36 month term of Federal Supervised release.

48) The plaintiff, lastly contends that at the time of his sudden transfer from Arizona to Connecticut, that he was a sane, logical man who was imprisoned for more than twelve years, and resided in the general population of eight Federal Correctional facilities, and was a model prisoner, who hadn't had an incident report in over 7 years, and during the entire time the plaintiff was incarcerated, the Psychiatric Security Review Board showed no interest in the plaintiff, made no inquiries about the plaintiff, received no periodic reports on the mental condition of the Plaintiff, even though periodic reports were statutorily required by

(6). the Connecticut General Statutes, and they held no hearings regarding the status of the plaintiff, that are also statutorily required once every two years, until approximately 3 months prior to the plaintiffs' release from federal prison, and only to serve the purpose of issuing an updated Memorandum of decision, containing an updated order for the plaintiffs' psychiatric confinement, as the last order of the Psychiatric Security Review was dated on or about December 4th, 2007, almost 14 years prior.

This Complaint is sworn to under the penalty of perjury pursuant to 28 U.S.C., Section 1746.

Signed: Roy Newbom on February 27th, 2023.